IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CR No. 2:22-CR-20083-JPM |
| | ) |
| COREY NEAL, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO SUPPRESS

COMES NOW the United States of America, by and through its counsel, Joseph C. Murphy, Jr., United States Attorney for the Western District of Tennessee, and the undersigned Assistant United States Attorney, Karen Hartridge, and responds to the motion to suppress filed by the defendant, specifically numbered document 17 in the above-referenced case. For the reasons that follow, the defendant's motion should be denied.

## FACTS

On October 10, 2021, Detective T. Parker of the Shelby County Sheriff's Office (SCSO) Narcotics Unit applied for, and was granted, a search warrant granting permission to search the defendant's residence at 873 Paradise Cove in Cordova, Tennessee. In the affidavit supporting his application, Detective Parker stated that in July 2021, a confidential source (CS) advised that a man known as "Rothschild" was selling

large amounts of marijuana in the Memphis area.  *See* Exhibit A. Detective Parker, utilizing law enforcement databases, researched the cellphone number the CS used to conduct transactions with "Rothchild" and obtained photos of the defendant. *Id*. Detective Parker showed a photo of the defendant to the CS who positively identified the individual as "Rothschild."  *Id*.

Within five days of applying for the search warrant, Detective Parker and Detective E. Burris met with the CS for the purpose of making an undercover buy of marijuana from the defendant. *Id*. Detectives provided the CS with SCSO Narcotics Unit funds and checked the CS's person and vehicle for contraband prior to the controlled buy.  *Id*.  The detectives observed the CS make a hand-to-hand transaction with the SCSO Narcotics Unit funds and, approximately five minutes after the transaction, met with the CS who produced a clear baggie containing suspected marijuana. *Id*. The CS advised the marijuana was purchased from the defendant. *Id*. Detective Parker recovered the suspected marijuana and transported it to the Property and Evidence Room at 201 Poplar, where it tested positive for THC. *Id*.

Throughout the investigation, Detective Parker utilized law enforcement databases and determined 873 Paradise Drive in Cordova to be a valid address for the defendant. *Id*. Detective Parker also determined that a 2018 Mercedes Benz sedan had a current registration which listed the Paradise Cove address and detectives, through surveillance, observed the defendant to be the sole driver of that sedan.  *Id*.  Detective Parker stated that in his experience, drug dealers keep narcotics, drug paraphernalia, drug documents, and U.S. currency related to sales of illegal narcotics at their place of residence and requested a search warrant for the residence of the defendant at 873 Paradise Cove. *Id*.

On October 12, 2021, the search warrant was executed. Detectives conducted intermittent surveillance prior to execution and observed the defendant pull into the garage of the residence in a blue Mercedes Benz sedan. The defendant exited the vehicle and entered the residence through the garage door. Detectives approached the residence, knocked, announced, and without answer forced entry inside the residence through the front door. A search of the residence yielded a Smith & Wesson .40 caliber pistol, a Jimenez Arms .32 caliber pistol, and an American Tactical 5.56 caliber rifle. Detectives recovered a black backpack in the trunk of the Mercedes Benz. Inside, the detectives located a clear bag containing 12 baggies of marijuana weighing a total of 379.9g tgw. The defendant advised detectives that the marijuana belonged to him and that he had been holding the firearms in the home for an unknown party.

## ARGUMENT

**A. There was a substantial basis to find probable cause to issue the search warrant.**

Neal argues the search of his residence and vehicle violated his Fourth Amendment rights because the search warrant was not supported by probable cause. Specifically, Neal contends the affidavit failed to establish a sufficient nexus between the place to be searched and the items to be seized.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To determine if probable cause exists, the task of the issuing judicial officer is "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit… there is a fair probability that contraband or evidence of a crime will be found in a particular

3

place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Franklin*, 622 F. App'x 501, 508 (6th Cir. 2015). "The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)); *see also United States v. Ugochukwu*, 538 F. App'x 674, 678 (6th Cir. 2013). Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. *United States v. Baechtle*, No. 2:13–cr–20054–SHM, 2015 WL 893348, at *7 (W.D. Tenn. Mar. 2, 2015) (citing *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003)). Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

Probable cause is a "practical and common-sensical standard[.]" *Florida v. Harris*, 568 U.S. 237, 244, 133 S.Ct. 1050 (2013). It requires only "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id*. (quoting *Gates*, 462 U.S. at 231, 238.) Courts have acknowledged as a common-sense matter that a suspect's home often will be a likely place that the suspect has kept evidence of a crime. *See United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) (collecting cases). All things being equal, for example, "it is reasonable . . . to assume that a person keeps his possessions where he resides." *Peffer v. Stephens*, 880 F.3d 256, 270 (6th Cir. 2018).

The Sixth Circuit in *United States v. Reed* acknowledged that there has been a recurring Fourth Amendment question, specifically when does evidence of an individual illegally selling drugs "create probable cause to search the individual's home for drugs,

4

drug proceeds, or other evidence of drug dealing?" 993 F.3d 441, 444 (6th Cir. 2021). When finding probable cause to search a home, the Sixth Circuit has found, "in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)). The Sixth Circuit has also "rejected 'the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.'" *Reed*, 993 F.3d at 448 (quoting *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016). However, when an officer identifies "recent, reliable evidence of drug activity," *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018), that activity can provide a "reason to believe that drugs or other evidence of crime [will] be found in the suspect's" home beyond the suspect's status as a drug dealer alone. *Id.* at 417.

Defendant claims there was no evidentiary nexus between his residence and the evidence sought. He overlooks the portion of the search warrant wherein Detective Parker writes that five days prior to the application for the search warrant detectives observed the CS purchase marijuana from the defendant. The Sixth Circuit has found "it 'well established' that a nexus to search the home can exist if a suspect's drug dealing is 'ongoing' at the time the police seek the warrant." *Reed*, 993 F.3d at 448, *citing United States v. Feagan*, 472 F. App'x 382, 392 (6th Cir. 2012). As such, the defendant's argument fails.

### B. The good-faith exception is applicable.

Even if the court were to find the warrant lacked probable cause, the exclusionary rule does not apply. When police act under a warrant that is invalid for lack of probable

5

cause, the exclusionary rule does not apply if the police acted "in objectively reasonable reliance" on the subsequently invalidated search warrant. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984). The Court in *Reed* explained that *Leon's* good-faith exception to the exclusionary rule does not apply if an officer's affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 933 F.3d at 450, citing *Leon*, 468 U.S. at 923. This "barebones affidavit" shows that the officer recklessly relied on the judge's decision that probable cause existed for the warrant. *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).

The affidavit in question in this case is not a "barebones affidavit" as it identifies a "minimally sufficient" nexus between the defendant's home and the evidence of his drug activity. *United States v. Carpenter*, 360 F.3d 519, 596 (6th Cir. 2004); *see also, e.g., McCoy*, 905 F.3d at 416; *United States v. Jenkins*, 743 F. App'x 636, 645 (6th Cir. 2018). The Sixth Circuit has described a minimally sufficient nexus as one in which there is "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *McCoy*, 905 F.3d at 416 (quoting *White*, 874 F.3d at 497). Here, the detectives had probable cause to believe the defendant was a drug dealer who had engaged in recent drugs sales. They observed the CS conduct a hand-to-hand drug sale with the defendant within five days of applying for the search warrant. They also had probable cause to believe the defendant lived at the home on Paradise Cove based on their research of law enforcement databases and the current registration of the Mercedes Benz sedan defendant was driving. Additionally, Detective Parker relied on his training and experience and indicated his belief that probable cause existed to search the defendant's

6

home based, in part, on this experience. *Sumlin*, 956 F.3d at 886 (quoting *United States v. Goward*, 188 F. App'x 355, 358 (6th Cir. 2006) (an "affiant officer's experience that drug dealers keep evidence of dealing at their residence" is an additional reason to find probable cause to search the drug dealer's home.). Accordingly, *Leon's* good-faith exception applies.

## CONCLUSION

Based on the foregoing facts, analysis, and case law, the United States respectfully submits that the defendant's motion to suppress should be denied and that all relevant evidence obtained by law enforcement should be admitted at trial.

Respectfully Submitted,
JOSEPH C. MURPHY, JR.
United States Attorney

/s/ Karen Hartridge
KAREN HARTRIDGE
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, Karen Hartridge, Assistant United States Attorney, do hereby certify that on July 20, 2022, a copy of the foregoing Response of the United States has been forwarded via the Court's electronic filing system to the defendant, through his attorney, Serena Gray, 200 Jefferson, Suite 200, Memphis, TN 38103.

/s/ Karen Hartridge
KAREN HARTRIDGE
Assistant United States Attorney