## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:22-cr-20083-JPM** |
| | ) | |
| **COREY NEAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS

Before the Court is Defendant Corey Neal's Motion to Suppress, filed July 6, 2022. (ECF No. 17.) District Judge Jon P. McCalla referred the motion to the undersigned for report and recommendation. (ECF No. 19.) The United States responded in opposition on July 20, 2022. (ECF No. 25.) The Court held a hearing on August 23, 2022.[1] (ECF No. 27.) Based on the statements of counsel and the entire record in this case, the Court recommends that the motion be denied.

## PROPOSED FINDINGS OF FACT

On April 28, 2022, a federal grand jury returned an indictment charging Neal with knowingly possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and knowingly possessing a firearm while having previously been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.)

---

[1] The hearing was limited to oral argument, with no evidence submitted.

On October 10, 2021, Detective T. Parker with the Shelby County Sheriff's Office applied for a warrant to search the premises at 873 Paradise Drive, Cordova, Tennessee 38018, by completing and executing, under oath, an affidavit for a search warrant. (ECF No. 32.) As grounds for issuance of the search warrant, Detective Parker indicated that, in early July 2021, he received information from a reliable confidential source that an individual known as "Rothschild" was selling large amounts of marijuana in the Memphis area. Detective Parker asserted that the confidential source had "produced multiple narcotic seizures and felony arrests in the past." The source provided Detective Parker with a cell phone number used to conduct transactions with Rothschild. Detective Parker researched law enforcement databases and determined the number was associated with Neal and obtained a photograph of Neal. Detective Parker showed the photograph to the source, who positively identified its subject as Rothschild.

In October 2021,[2] Detectives Parker and Burriss met with the source to arrange an undercover buy of marijuana from Neal. Detective Parker provided Shelby County Sheriff's Office funds to the source and checked the source and his/her vehicle for contraband. Detective Parker indicated that "Detectives observed the CS make a hand to hand transaction involving SCSO Narcotics funds and illegal narcotics. Approximately five minutes later, detectives met with the CS who produced a clear baggie containing suspected Marijuana and advised it was purchased from Neal." The substance in the baggie later tested positive for THC.

Detective Parker also used law enforcement databases to identify an address associated with Neal—873 Paradise Drive—and to learn that a 2018 Mercedes Benz, of "which Detectives have observed Neal as the sole driver," was registered to that address. Detectives Parker and

---

[2] The affidavit asserts that the date was within five days of October 10, 2021, but does not identify the precise date.

Burriss conducted intermittent surveillance at the address in October 2021 and "observed Neal day and night enter and exit the residence utilizing key access."

Detective Parker concluded by asserting that he had been with the Shelby County Sheriff's Office for approximately eight years, assigned to its Narcotics division for approximately four years. He added that, "[f]rom experience, Detectives know drug dealers keep narcotics, drug paraphernalia, drug documents, and U.S. currency related to sales of illegal narcotics at their place of residence." He concluded by stating that "Detectives believe Neal is selling and storing illegal narcotics at 873 Paradise Dr., Cordova, TN 38018 and that evidence of the crime will be present at this location."

Based on the affidavit, Judge John Campbell of the Criminal Court of Shelby County, Tennessee, found probable cause that Neal had in his possession "Marijuana, Drug Paraphernalia, Drug Ledgers, Drug Proceeds, [and] Electronic Storage Devices" and issued a warrant to search the residence at 873 Paradise Drive, as well as any automobiles and outbuildings associated with the residence. Judge Campbell signed the search warrant at 8:38 p.m. on October 10, 2021. The search warrant was executed on October 12, 2021, and officers recovered firearms and narcotics from the residence and the trunk of the Mercedes Benz. (ECF No. 25, at 3.)

## PROPOSED CONCLUSIONS OF LAW

Neal seeks suppression of the fruits of an illegal search unsupported by probable cause. Neal bears the burden of proof. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979))).

I.      **Probable Cause**

The issue before the Court is whether the affidavit provided probable cause for issuance of the warrant.  The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. Amend. IV.  "In reviewing the sufficiency of the evidence supporting probable cause, we are limited to examining the information contained within the four corners of the affidavit.  Nevertheless, when considering that information, we look to the totality of the circumstances."  *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005); *Illinois v. Gates*, 462 U.S. 213, 230 (1983)); *see also United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) ("Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny."  (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004))).

"'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion,' and is found to exist when there is 'a "fair probability" that evidence of a crime will be located on the premises of the proposed search.'" *Jackson*, 470 F.3d at 306 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)).  "There must, in other words, be a *nexus* between the place to be searched and the evidence sought."  *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)).  The reviewer of a search warrant application is "to make a practical, common-sense decision," based on "all the circumstances set forth in the affidavit."  *Id.* (quoting *Gates*, 462 U.S. at 238).

"The standard of review for determining the sufficiency of the affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Rodriguez-Suazo*, 346 F.3d at 643 (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "[T]he magistrate's probable cause determination should be afforded great deference." *Id.* (quoting *Davidson*, 936 F.2d at 859). That "deferential review is consistent with 'the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" *Id.* (quoting *Gates*, 462 U.S. at 236). Neal challenges the sufficiency of the evidence of probable cause in the affidavit on multiple bases—though his motion focuses primarily on an asserted lack of nexus, he also raised arguments at the hearing as to the reliability of the confidential source's information.

A.     The reliability of the confidential source

Neal questions the reliability of the confidential source. "When an affidavit relies on information from a confidential source . . . , examining the totality of the circumstances includes examining the 'veracity, reliability, and basis of knowledge' of the source." *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022) (quoting *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018)). "The veracity, reliability, and basis of knowledge of a source 'are not "separate and independent requirements to be rigidly exacted in every case."'" *Id.* (quoting *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009)). Information from a confidential source can support a finding of probable cause where the affidavit contains "facts supporting an independent judicial determination that the informant is reliable," such as corroboration of the source's information or an attestation that the source had "provided reliable information in the past." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (citing *United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir. 2000)).

The affidavit in this case establishes the reliability of the confidential source. Detective Parker attested that "[t]his CS has produced multiple narcotic seizures and felony arrests in the past." Sixth Circuit "precedent 'clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.'" *United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) (quoting *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001)); *see also Helton*, 35 F.4th at 519 (refusing to accept an affiant's bare assertion that an informant was "reliable" without any supporting facts). Detective Parker's statement indicates that the source has provided information in the past that aided in the prosecution of narcotics crimes, the same type of crime being investigated in this case. Though the affidavit provides no details regarding the prior information, "such a level of specificity is not necessary." *Brown*, 732 F.3d at 574. The affidavit thus demonstrates that the source was reliable.

Neal further argues that the confidential source's information was insufficiently corroborated, rendering that information unreliable. However, where "a confidential informant—personally known by the affiant to be reliable—alleged direct, personal observation of criminal activity, then the affiant would not have to include in the affidavit further corroboration of the informant's allegations." *Brown*, 732 F.3d at 574 (citing *Allen*, 211 F.3d at 976); *see also United States v. Howard*, 632 F. App'x 795, 804 (6th Cir. 2015) ("Where the veracity and basis of knowledge of an informant have been thoroughly established, corroboration of the tip may not be necessary."). Here, as discussed above, the affidavit establishes that the source had been reliable in the past, and it then goes on to describe the source's report to the detectives, five minutes after the transaction, that he had purchased marijuana from Neal. Further corroboration was unnecessary.

In any event, the affidavit does describe some corroboration of the source's information. The detectives "observed" the transaction and then met with the source five minutes later, who produced marijuana and said he had purchased it from Neal.  Neal argues first that this event does not constitute independent corroboration because Detective Parker did not attest that he saw Neal participate in the transaction and instead relied on the source's after-the-fact identification of Neal as the seller.[3]  Neal also argues that the transaction does not sufficiently corroborate the source's information that Neal had been selling "large amounts" of marijuana because the affidavit does not indicate how much marijuana the source purchased in the undercover buy.

Neal is correct that the affidavit provides few details regarding the controlled purchase and leaves many questions unanswered.[4]  That lack of detail, however, does not render the source's information insufficient to support probable cause.  *See, e.g.*, *Howard*, 632 F. App'x at 805 ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing 'a substantial basis for crediting the [informant's] hearsay.'" (quoting *Gates*, 462 U.S. at 244–45)). And though the affidavit does not indicate whether the amount of marijuana the source purchased was "large," the controlled purchase does corroborate that Neal was selling marijuana within five days of the search warrant application.[5]  In light of the source's prior reliability and

---

[3] The affidavit states that "Detectives observed the CS make a hand to hand transaction involving SCSO Narcotics funds and illegal narcotics," and then that the source confirmed he purchased the marijuana from Neal, but it does not explicitly say that the detectives themselves saw Neal participate in the transaction.
[4] For example, Neal argued at the hearing that the affidavit at times refers specifically to Detectives Parker and/or Burriss, but elsewhere it refers only generically to "detectives," resulting in ambiguity as to who saw what and who did what.
[5] Furthermore, even if the affidavit specified that the source purchased a small amount of marijuana from Neal in that transaction, such information would not necessarily undermine the source's tip that the amount of marijuana sold by Neal in the Memphis area, in toto, was "large."

the source's allegation of direct, personal participation in a marijuana transaction with Neal, the totality of the circumstances supports the finding of probable cause that Neal was selling large amounts of marijuana in the Memphis area.

      B.    <u>Nexus</u>

      Neal's principal attack on the search is that the affidavit fails to establish a nexus between evidence of drug trafficking and his home.  According to Neal, "the affidavit is devoid of any facts that connect Mr. Neal's home with any evidence of drug trafficking."  (ECF No. 17, at 5.)  In fact, the affidavit sets out the following relevant facts: (1) a confidential source identified Neal as responsible for selling large amounts of marijuana in the Memphis area, (2) three months later, and within five days of the search, that source participated in a controlled purchase and asserted that Neal sold him marijuana, (3) Neal was residing at 873 Paradise Drive at the time, and (4) "[f]rom experience, Detectives know drug dealers keep narcotics, drug paraphernalia, drug documents, and U.S. currency related to sales of illegal narcotics at their place of residence."  The United States submits these facts create a sufficient nexus to justify the search of Neal's home.

      The Sixth Circuit has recently acknowledged its "struggle[]" in deciding when evidence that an individual is selling drugs creates probable cause to search that individual's home. *United States v. Reed*, 993 F.3d 441, 444 (6th Cir. 2021) (quoting *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018)).  The difficulty arises from two competing principles: "[o]n the one hand, probable cause to arrest a suspect does not necessarily establish probable cause to search the suspect's home," especially due to the Fourth Amendment's treatment of "the home as 'first among equals,'" entitled to "'core' protection."  *Id.* at 447 (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)).  "On the other hand, . . . many courts have acknowledged as a common-sense

matter that a suspect's home often will be a likely place that the suspect has kept evidence of a crime." *Id.* (citing *United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008)). "With categorical statements pointing in opposite directions," precedent demonstrates "the difficulty of providing 'guidance for such a fact-bound legal determination,'" particularly regarding drug trafficking cases. *Id.* at 448 (quoting *Brown*, 828 F.3d at 382; comparing, e.g., *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (finding that, "in the case of drug dealers, evidence is likely to be found where the dealers live," and thus "courts generally may find a nexus to search a drug dealer's home even when there is absolutely no indication of any wrongdoing occurring there") (internal quotations omitted), with, e.g., *Brown*, 828 F.3d at 383 (rejecting "the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home")).[6]

The Sixth Circuit has "reconciled our caselaw in fact-specific ways." *Reed*, 993 F.3d at 448. As relevant to this case, it is "'well established' that a nexus to search the home can exist if a suspect's drug dealing is 'ongoing' at the time the police seek the warrant." *Id.* (quoting *United States v. Feagan*, 472 F. App'x 382, 392 (6th Cir. 2012)). "When an officer identifies

---

[6] In *Brown*, the court distinguished between "the typical drug trafficking case" and cases containing "overwhelming evidence that the defendants were major players in a large, ongoing drug trafficking operation," with only the latter justifying the finding of a sufficient nexus where "the affidavit did not contain facts showing that the residence had been used in drug trafficking." 828 F.3d at 383 n.2. The court found the affidavit's description of Brown as a known drug dealer inadequate because it merely described his presence as a passenger in a drug dealer's car after a suspected drug deal, his possession of $4,813 and two cell phones that contained the dealer's contact information and a text message about drug prices, and a drug dog alert to the odor of narcotics in his car. *Id.* at 384 ("Although some of these facts suggest that Brown may have been involved in the heroin drug conspiracy—and thus established probable cause to arrest Brown—they are too inconclusive to assume, for the purpose of determining probable cause to search Brown's residence, that he was a known drug dealer."). Here, in contrast, the detectives had reliable information that Neal was selling large amounts of marijuana in Memphis, corroborated by a controlled purchase of marijuana from Neal.

'recent, reliable evidence of drug activity,' that activity can provide a 'reason to believe that drugs or other evidence of crime [will] be found in the suspect's' home beyond the suspect's status as a drug dealer *alone*." *Id.* (quoting *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018); *Peffer v. Stephens*, 880 F.3d 256, 273 (6th Cir. 2018)).[7]  In contrast, where a suspect has "engaged in, at most, one drug transaction," or the drug activity is "from a significant time ago," the nexus may be lacking.  *Reed*, 993 F.3d at 449 (citing, e.g., *United States v. Fitzgerald*, 754 F. App'x 351, 360 (6th Cir. 2018); *United States v. Ward*, 967 F.3d 550, 555–57 (6th Cir. 2020)).

The facts of *Reed* are similar to the instant case—a reliable confidential informant had made a recent controlled purchase from Reed and had seen him selling and storing marijuana at his girlfriend's tire shop.  993 F.3d at 445.  In addition, officers actually observed Reed sell marijuana to the informant, as well as conduct other hand-to-hand transactions, including in front of his mother's house.  *Id*.  Though the affiant recounted his experience investigating drug crimes, it does not appear that he expressed an opinion, like the one in this case, that drug dealers typically keep evidence of drug trafficking in their homes.  *See id.*  The Sixth Circuit described the facts of *Reed* as "sit[ting] on the hazy constitutional border between a sufficient nexus and an insufficient hunch."  *Id.* at 449–50.  The court declined to resolve the issue and instead found exclusion inappropriate under the *Leon* good-faith exception (discussed below).

---

[7] On this basis, *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005), is also distinguishable.  In that case, the court found the description of the defendant as a known drug dealer insufficient to justify a search of his home where "the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the proposed search)."  *Id.* at 533.  As discussed herein, this case involves "recent, reliable evidence of drug activity" in the form of a proven confidential source and a controlled purchase—ongoing drug dealing sufficient to establish a nexus even without additional information of illegal activity at Neal's home.

If the nexus determination in *Reed* was "hazy," then it likewise is in this case. However, under Sixth Circuit precedent, the information provided in the affidavit is sufficient to establish probable cause. "It is well established that if there is probable cause to suspect an individual of being an ongoing drug trafficker, there is a sufficient nexus between the evidence sought and that individual's home." *Feagan*, 472 F. App'x at 392 (citing, e.g., *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009));[8] *see also McCoy*, 905 F.3d at 417 ("[O]ur cases have long established that 'probable cause generally exists to search for the fruits and instrumentalities of criminal activity at the residence of a drug dealer with continual and ongoing operations.'" (quoting *United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005))).

The *Reed* court acknowledged that "our precedent leaves unclear the amount of drug activity required to invoke this nexus principle"—"[s]ometimes we have suggested that it applies to 'a large, ongoing drug trafficking operation,'" whereas "[o]ther times . . . we have suggested that it can apply based on 'recent, reliable evidence of drug activity.'" 993 F.3d at 451 (quoting *Brown*, 828 F.3d at 383 n.2; *McCoy*, 905 F.3d at 418). But this case satisfies either standard. The affidavit includes reliable (as discussed above) information that Neal was known to traffic in large amounts of marijuana *and* that he had engaged in a recent drug transaction (plus the affiant's statement from experience that drug dealers keep evidence of their crimes at their homes). Neal's repeated argument that this search warrant was based a single drug transaction

---

[8] Though the *Reed* court identified "fact-specific rationales" limiting this principle—where the defendant engaged in only one drug transaction, where the described drug activity was stale, where there was no evidence that the home searched belonged to the defendant, where the defendant may have only possessed drugs for personal use, or where the informant was deemed unreliable—none of those limiting factual scenarios exist in this case. *See* 993 F.3d at 449.

simply does not reflect the facts.  Though this case may be close, precedent dictates a finding that the affidavit establishes a sufficient nexus.

Neal has failed to establish that the affidavit does not provide a substantial basis for probable cause.  As such, exclusion is unwarranted, and denial of the motion to suppress is recommended.

## II.    Good Faith Exception

Even if the affidavit is unsupported by probable cause, the good-faith exception to the exclusionary rule applies.  Under that exception, "even if the search warrant were found to be fatally defective, the evidence would not be suppressed 'if the seizure was based on reasonable, good faith reliance on the warrant.'"  *United States v. Hill*, 27 F.4th 1155, 1192 (6th Cir. 2022) (quoting *United States v. Abboud*, 438 F.3d 554, 578 (6th Cir. 2006)).  "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"  *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)).  "[T]he burden rests on the government to prove that [the executing officer's] reliance on a warrant was objectively reasonable."  *United States v. Linares*, No. 13-20368, 2015 WL 3870959, at *9 (E.D. Mich. May 4, 2015) (quoting *United States v. Rissew*, 580 F. App'x 35, 36 (2d Cir. 2014)).

The "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations."  *Davis v. United States*, 564 U.S. 229, 236 (2011) (citing, e.g., *Herring v. United States*, 555 U.S. 135, 141 (2009)).  Its operation is thus limited "to situations in which this purpose is 'thought most efficaciously served.'  Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'"  *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974); *United States v. Janis*, 428 U.S. 433, 454 (1976)).  In addition to

deterrence, "[t]he analysis must also account for the 'substantial social costs' generated by the rule," which "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Id.* (quoting *Leon*, 468 U.S. at 907). Thus, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.* (citing *Herring*, 555 U.S. at 141; *Leon*, 468 U.S. 910).

That "cost-benefit analysis" focuses on "the 'flagrancy of the police misconduct' at issue." *Id.* at 238 (quoting *Leon*, 468 U.S. at 909). "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* (quoting *Herring*, 555 U.S. at 144). "But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, . . . the 'deterrence rationale loses much of its force' . . . ." *Id.* (quoting *Leon*, 468 U.S. at 919). A warrant "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"—a "bare bones affidavit"—"shows that the officer recklessly relied on the judge's decision that probable cause existed for the warrant." *Reed*, 993 F.3d at 450 (quoting *Leon*, 468 U.S. at 923; *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017)).

As relevant in this case, "[f]or an officer's reliance to have been reasonable, the application must have provided 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" *McCoy*, 905 F.3d at 416 (quoting *Brown*, 828 F.3d at 385). A "substantial basis" for that nexus is not required, "only 'some connection, regardless of how remote it may have been—some modicum of evidence, however slight.'" *Id.* (quoting *White*, 874 F.3d at 497). "[A] link between the drug dealer's activities and his home that would be insufficient to establish probable cause may suffice to establish good-faith reliance on the

warrant." *Id.* at 417 (citing *Frazier*, 423 F.3d at 537); *see also Reed*, 993 F.3d at 450 ("There obviously 'must be daylight' between the two standards because *Leon*'s exception applies only when an affidavit falls short of probable cause." (quoting *White*, 874 F.3d at 497)).  However, the affidavit must still "present some 'particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions.'"  *McCoy*, 905 F.3d at 416 (citing *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006)).

As discussed above, the affidavit in this case provides particularized facts that at least present a modicum of evidence connecting Neal's suspected illegal activity and his home.  In July 2021, detectives learned from a reliable confidential source that "Rothschild," later identified by the source as Neal, was selling large amounts of marijuana in the Memphis area. Three months later, detectives arranged a controlled purchase of marijuana, which the source told them he/she bought from Neal.  Armed with that information, along with their experience-based knowledge that drug dealers keep narcotics and other indicia of drug sales in their homes, detectives formed a belief that evidence of drug trafficking would be found at Neal's home.  The information about Neal's prior sale of "large amounts" of marijuana, the October 2021 controlled purchase of marijuana from Neal, and the detectives' experience combine to constitute reasonable grounds for that belief.

Neal relies on a number of cases in arguing for the opposite conclusion, but to no avail. At the hearing, Neal focused primarily on distinguishing *McCoy* and *Reed*—both cases in which the Sixth Circuit did not address the probable cause inquiry and instead applied the good faith exception—which Neal argued involved affidavits describing more detail and more extensive police work than in the present case.  In *McCoy*, officers learned from an informant that the defendants had been selling marijuana from the store where one of them worked, and the

informant had seen marijuana, large amounts of money, and guns in the defendants' home.  905

F.3d at 413.  An officer conducted surveillance at the store and saw a large amount of foot

traffic, which he considered consistent with drug trafficking.  The officer arrested one of the

defendants in the store after finding him with a large bag of marijuana, while the other defendant

was present.  The officer obtained a search warrant for the store, where he found drug

paraphernalia, gun accessories, and mail addressed to McCoy—but no drugs.  *Id.* at 414.  The

officer then obtained a warrant to search the defendants' home, based on all of that information,

and on the fact that defendants had drug-trafficking criminal histories.  *Id.* at 414–15.  Based in

large part on a "continual-and-ongoing-operations theory"—the inference "that when a drug

dealer is engaging in continual and ongoing operations, drug contraband is likely to be found in

the drug dealer's home"—the court found "law enforcement's belief that the affidavit provided

probable cause to search [the defendants'] home was not unreasonable."  *Id.* at 418, 421; *see also*

*id.* at 417–18 ("When a warrant application presents reliable evidence that a drug-trafficking

operation is ongoing, 'the lack of a direct known link between the criminal activity and [dealer's]

residence[] becomes minimal.'"  (quoting *Newton*, 389 F.3d at 635–36)).

 In *Reed*, officers suspected the defendant of selling marijuana and obtained three search

warrants.  993 F.3d at 445.  The first was for a warrant to search a tire shop, owned by Reed's

girlfriend, where a reliable informant had seen Reed selling and storing marijuana, confirmed by

a controlled purchase from Reed within five days of the warrant application.  The officer had

also surveilled Reed and his girlfriend drive from their home to the shop and both use their own

sets of keys to open the shop on different occasions.  The second affidavit was for a warrant to

search Reed's mother's home, the address listed on Reed's driver's license.  *Id.*  Officers

arranged a controlled purchase at that location and saw Reed walk out of the house and sell

marijuana to the informant.  Officers also saw Reed conducting hand-to-hand transactions, trading money for clear bags of unknown substances, in the driveway of the house and while driving in the area.  The affidavit noted Reed's history of drug convictions.  *Id.*

The third affidavit—the subject of the challenge—was for a warrant to search the home where Reed lived with his girlfriend.  *Id.*  That affidavit detailed the officer's experience investigating drug crimes, the two controlled purchases at the other locations, that the utilities were under the girlfriend's name, that the officer had seen Reed leave the house, and that the informant confirmed Reed and his girlfriend lived together.  *Id.*  The court found the officers' reliance on the warrant reasonable because they "had probable cause to believe that Reed was a drug dealer who had engaged in recent drug sales"—based on the reliable informant's controlled purchases and on their own surveillance—and probable cause to believe Reed lived at the home with his girlfriend.  *Id.* at 451.

Neal is correct that the affidavits in *McCoy* and *Reed* describe more details and more police work than the affidavit in the instant case.  The nexus here nonetheless exceeds the "modicum of evidence" standard, rendering the officers' reliance on the affidavit reasonable. Though the evidence supporting that nexus may be less substantial than that presented in *McCoy* or *Reed*, it nonetheless constitutes "'particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions.'"  *McCoy*, 905 F.3d at 416 (quoting *McPhearson*, 469 F.3d at 526).  Indeed, the *Reed* court stated that the existence of probable cause to believe that the defendant "was a drug dealer who had engaged in recent drug sales" and that the defendant lived at the subject residence—both data points likewise supported by probable cause in this case—went "a long way toward showing that *Leon*'s good-faith exception applies."  993 F.3d at 451.  And, as in *Reed*, when those facts are combined with the

officers' reliance on their experience and the murky state of applicable precedent, they bring the affidavit "within the range of reasonableness permitted by *Leon*."  *Id.* at 452.

Neal's final argument is that the detectives surveilled his home but apparently did not observe any drug trafficking activity (otherwise they surely would have included it in the affidavit), and thus they could not have had a good faith belief that evidence of drug trafficking would be present in the home.  The affidavit describes the surveillance as "intermittent," however, and conducted over a five-day period before the detectives applied for the search warrant.  The lack of observation of drug trafficking during that limited, intermittent surveillance does not negate the detectives' good faith reliance on the affidavit.

The affidavit in this case meets the standard for the good-faith exception.  "[T]he fact that an affidavit exceeds *Leon*'s low 'bare-bones' bar does not make it a model of good police work." *Reed*, 993 F.3d at 454.  It does, however, render application of the exclusionary rule inappropriate.

## **RECOMMENDATION**

For the foregoing reasons, this Court recommends the motion to suppress be denied.

Respectfully submitted this 20th day of October, 2022.

> s/Annie T. Christoff
> ANNIE T. CHRISTOFF
> UNITED STATES MAGISTRATE JUDGE

### **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file written objections to the proposed findings and recommendations. Fed. R. Crim. P. 59(b)(2).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.