# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-20083-JPM-1 |
| v. | ) | |
| | ) | |
| COREY NEAL, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING IN PART THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is the Report and Recommendation of United States Magistrate Judge Annie T. Christoff, filed on October 20, 2022 (ECF No. 33), with respect to Defendant Corey Neal's Motion to Suppress. (ECF No. 17.) Defendant's Motion to Suppress was filed on July 6, 2022. (Id.) The United States of America (the "Government") filed a Response in Opposition to Defendant's Motion to Suppress on July 20, 2022. (ECF No. 25.) The Magistrate Judge held a hearing on Defendant's Motion to Suppress on August 23, 2022, which was limited to oral argument with no evidence submitted, as the facts in this case are not in dispute. (ECF No. 27.) The Magistrate Judge recommends that the Court deny Defendant's Motion. (Id. at PageID 51.) Defendant filed a timely objection to the Magistrate's Report and Recommendation on November 9, 2022.[1] (ECF No. 36.) The Government filed a Response to Defendant's Objections on December 9, 2022. (ECF No. 39.)

---

[1] Defendant's Objections were originally due by November 3, 2022, but the Court granted Defendant's Oral Motion for an Extension of Time and extended this deadline until November 18, 2022. (ECF No. 34.)

Upon de novo review, the Court **ADOPTS IN PART** the Report and Recommendation of the Magistrate Judge.  Accordingly, Defendant's Motion to Suppress is **DENIED**.

I.    **BACKGROUND**

On April 28, 2022, a federal grand jury returned an indictment charging Corey Neal with two counts: one count of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and one count of knowingly possessing a firearm while having been previously convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1.)

Detective T. Parker of the Shelby County Sherriff's Office applied for a search warrant for the premises located at 873 Paradise Drive, Cordova, Tennessee (the "subject property") on October 10, 2021.  (ECF No. 32 at PageID 49.)  Detective Parker submitted an affidavit which laid out the grounds for the warrant.  (Id. at PageID 50.)  He wrote that he received information in early July 2021 from a confidential source that an individual known as "Rothschild" was selling "large amounts of [m]arijuana" in the Memphis, Tennessee area.  (Id.)  The confidential source also provided him with "Rothschild's" cell phone number.  (Id.)  When Detective Parker used the number to obtain photographs of Defendant Corey Neal from law enforcement databases, the confidential source positively identified "Rothschild" as Defendant Corey Neal. (Id.)  Detective Parker explained that the confidential source had "produced multiple narcotic seizures and felony arrests in the past."  (Id.)

Detective Parker also wrote that detectives observed "the [confidential source] make a hand to hand transaction involving [Shelby County Sheriff's Office] Narcotics funds and illegal narcotics" within five days of October 10, 2021 (the "controlled buy").  (Id.)  The confidential source then produced a "clear baggie" containing suspected marijuana and advised the

detectives that he had purchased it from Defendant.  (Id.)  The suspected marijuana was tested

by the Memphis Police Department and returned a positive result for THC.  (Id.)

Law enforcement "conducted intermittent surveillance" of the subject property that

same month and observed Defendant enter it using a key both during the day and at night.  (Id.)

A car "which Detectives . . . observed Neal as the sole driver" of was also registered to the

subject property.  (Id.)

Finally, Detective Parker stated in the affidavit that he had been with the Shelby County

Sheriff's Office for "approximately 8 years" and assigned to the Narcotics Division for

"approximately 4 years," and that in his experience "Detectives know drug dealers keep

narcotics, drug paraphernalia, drug documents, and U.S. currency related to sales of illegal

narcotics at their places of residence."  (Id.)  He concluded by stating that "Detectives believe

Neal is selling and storing illegal narcotics at 873 Paradise Dr., Cordova, TN 38018 and that

evidence of the crime will be present at this location."  (Id.)

> Based on the affidavit, Judge John Campbell of the Criminal Court of Shelby
> County, Tennessee, found probable cause that Neal had in his possession
> "Marijuana, Drug Paraphernalia, Drug Ledgers, Drug Proceeds, [and] Electronic
> Storage Devices" and issued a warrant to search the residence at 873 Paradise
> Drive, as well as any automobiles and outbuildings associated with the
> residence. Judge Campbell signed the search warrant at 8:38 p.m. on October
> 10, 2021. The search warrant was executed on October 12, 2021, and officers
> recovered firearms and narcotics from the residence and the trunk of the
> Mercedes Benz.

(ECF No. 33 at PageID 53.)

## II.    LEGAL STANDARD

*A. Standard of Review*

"Within 14 days after being served with a copy of the recommended disposition, a party

may serve and file specific written objections to the proposed findings and recommendations."

Fed. R. Civ. P. 72(b)(2).  "When no timely objection is filed, the court need only satisfy itself

that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee notes.

When a timely objection has been filed, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The portions of a magistrate judge's recommendation as to which no specific objections were filed are reviewed for clear error. See Fed. R. Civ. P. 72(b) advisory committee notes; Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991) (noting that when a party makes a general objection, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless"). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." Howard, 932 F.2d at 509. Moreover, the "failure to properly file objections constitutes a waiver of appeal." See id. at 508 (citing United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

*B. Burden of Proof*

When a defendant seeks suppression of the fruits of an illegal search, "the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." United States v. Rodriguez-Suazo, 346 F.3d 637, 643 (6th Cir. 2003) (quoting United States v. Feldman, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). In evaluating the good-faith exception to the exclusionary rule, "[t]he burden rests on the government to prove that [the executing officer's] reliance on a warrant was objectively reasonable." United States v. Linares, No. 13-20368, 2015 WL 3870959, at *9 (E.D. Mich. May 4, 2015) (quoting United States v. Rissew, 580 F. App'x 35, 36 (2d Cir. 2014)) (alteration in original).

4

### III.    ANALYSIS

#### A. *Probable Cause*

Defendant objects to the Magistrate Judge's determination that there was sufficient probable cause to form a basis for the issuance of the warrant in this case.  (ECF No. 36 at PageID 72.)  The Magistrate Judge additionally found that the confidential source who provided information to the officers in the instant case was reliable.  (ECF No. 33 at PageID 55.)  As Defendant did not object to the finding regarding the reliability of the confidential source specifically, the Court reviews the Magistrate Judge's recommendation regarding that issue for clear error.  Howard, 932 F.2d at 509.  Finding no clear error, the Court finds that he or she was reliable, and solely addresses Defendant's objection as to nexus.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV.  Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).  A warrant is found to issue upon probable case when the search warrant affidavit shows "a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Jackson, 470 F.3d 299, 306 (6th Cir. 2006) (quoting Bennett, 905 F.2d at 934) (quotation marks omitted).  "There must, in other words, be a *nexus* between the place to be searched and the evidence sought." United States v. Brown, 828 F.3d 375, 381 (6th Cir. 2016) (quoting United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004)) (emphasis in original).  "The specific 'things' to be searched for and seized" must be reasonably suggested by the affidavit to be "located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).  "In reviewing the sufficiency of the evidence supporting probable cause, we are

limited to examining the information contained within the four corners of the affidavit." United States v. Dyer, 580 F.3d 386, 390 (6th Cir. 2009). Search warrant affidavits "must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." Jackson, 470 F.3d 299 at 306.

"The standard of review for determining the sufficiency of the affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" Rodriguez-Suazo, 346 F.3d at 643 (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)). "[T]he magistrate's probable cause determination should be afforded great deference." Id. (quoting Davidson, 936 F.2d at 859).

*B. Nexus*

Defendant contends that the search warrant in the affidavit presented an insufficient nexus to justify a search of his home. (ECF No. 36 at PageID 73.) He argues that the confidential source's "bald statement about large sales of marijuana" unaccompanied by "mention of any sales from the residence" was insufficient to establish probable cause to search the subject property. (Id. at PageID 74.)

It is true that the search warrant affidavit carries no hint that Defendant's alleged drug dealing had any connection to his home. An individual's "status as a drug dealer, standing alone" does not give rise to probable cause to search his home. United States v. Frazier, 423 F.3d 526, 533 (6th Cir. 2005). Such a search requires a stronger nexus, because "when it comes to the Fourth Amendment, the home is first among equals." Florida v. Jardines, 569 U.S. 1, 6 (2013). However, there *is* a "reasonable inference that evidence of a crime is likely to be found where known drug traffickers reside." United States v. Brown, 801 F.3d 679, 688 (6th Cir.

2015).  These "two competing principles" mean that the Court must evaluate how much more than Defendant's status as an alleged drug dealer is required to create a nexus between the Defendant's home and evidence of drug dealing.  United States v. Reed, 993 F.3d 441, 444 (6th Cir.) (2021).  The caselaw does not draw a clear line, and this is a "fact-bound legal determination." Brown, 828 F.3d 375, 382.

"[R]egular or repetitive drug sales involving a large quantity of drugs" or a "record of past drug convictions coupled with recent, reliable evidence of drug activity" can give rise to the inference that evidence of drug trafficking will be found in the suspect's home, even without any other indication of drug activity in the vicinity of the residence.  United States v. McCoy, 905 F.3d 409, 418 (6th Cir. 2018).  In addition, "a nexus to search the home can exist if a suspect's drug dealing is 'ongoing' at the time the police seek the warrant."  Reed, 993 F.3d at 444.  In sum, "[r]ecent, reliable evidence of drug activity" may provide sufficient nexus to search a suspect's home standing alone.  Id. (quoting McCoy, 905 F.3d at 418).  There is language in the caselaw that implies that the Court may find a nexus in circumstances where even less evidence implicates a defendant in drug dealing, and that a search warrant affidavit "containing credible, verified allegations of drug trafficking [and] verification that said defendant lives at a particular residence, combined with the affiant officer's experience that drug dealers keep evidence of dealing at their residence" can form a sufficient nexus to search a suspect's home even "when there is absolutely no indication of any wrongdoing occurring at that residence." United States v. Goward, 188 F. App'x 355, 358–59 (6th Cir. 2006).

Cases in which ongoing drug operations alone justify the search of an alleged drug dealer's home typically involve a large amount of drugs or a robust body of evidence of drug dealing.  See, e.g., McCoy, 905 F.3d at 413–14 (an anonymous tip, surveillance of a place of

business which indicated drug dealing, "two to three ounces of marijuana" found on the person of one of the defendants, drug-trafficking criminal histories on the parts of the defendants, and discovery of "drug-distribution paraphernalia [and] gun accessories" at a place of business before police obtained warrant for a home); Goward, 188 F. App'x at 356–57 (two controlled purchases, one of over one pound of marijuana, and information that the defendant was involved in receiving a truckload of the drug before police obtained warrant for a home); United States v. Miggins, 302 F.3d 384, 393–94 (6th Cir. 2018) (defendant picked up a package containing a kilogram of cocaine and was believed to have been previously convicted on multiple cocaine charges when police obtained warrant for a home).  The evidence against Defendant as set out in the search warrant affidavit, in the form of the single observed controlled purchase of marijuana, did amount to "recent, reliable evidence of drug activity." McCoy, 905 F.3d at 418. However, it did not amount to "overwhelming evidence" that Defendant was a "major player[]" in a large, ongoing drug trafficking operation." United States v. Brown, 828 F.3d 375, 383 (6th Cir. 2016).

The Sixth Circuit has not offered guidance as to the scale or degree of corroboration that turns the search of a home from one based purely on the suspect's status as a drug dealer into a legitimate search with sufficient nexus.  Reed, 993 F.3d at 449 (noting both scale of operations and additional evidence, as well as other indicia of corroboration, as potential factors to be considered in this circuit and in others).  Rather, it describes drawing "fine lines" as the "nature of the task" in addressing the "nexus question." Id. at 447.

In the instant case the amount of marijuana purchased in the controlled buy was described as being held in a "baggie," an unquantified but apparently rather small amount of the drug.  (ECF No. 32 at PageID 49.)  In addition to this single controlled buy, the confidential

8

informant also told officers that Defendant was known to traffic large amounts of marijuana. (Id.)  A single controlled buy of a small quantity of drugs was not sufficient to corroborate the confidential informant's statement that Defendant was a major dealer in marijuana.  See Frazier, 423 F.3d at 530 (two confidential informants reporting that the defendant sold and kept drugs in his home, a third witness reporting that the defendant sold him large quantities of marijuana, and phone records showing the defendant was in constant contact with known drug dealers not enough to establish a nexus to search the defendant's home). The "continual and ongoing operations" of a drug dealer can provide probable cause to search that individual's home, but a single purchase does not add up to a continual operation without more.  McCoy, 905 F.3d at 417 (quoting United States v. Newton, 389 F.3d 631, 636 (6th Cir. 2004), vacated on other grounds, 546 U.S. 803 (2005)).  The facts as they are set out in the affidavit show that law enforcement had probable cause to believe that Defendant was dealing drugs, but they do not support the quite different proposition that "there [was] a fair probability that the person's home [would] contain evidence of" the charges against him.  Reed, 993 F.3d  at 447.  The home is at the "very core" of Fourth Amendment protections, and some further corroboration of Defendant's continual operation as a drug dealer or status as a major seller of marijuana was required to justify intrusion into that space.  Jardines, 569 U.S. at 1.

Finally, there is a statement by an officer in this case that his experience led him to understand that drug dealers keep evidence of their crimes in their homes.  (ECF No. 32 at PageID 49.)  This statement of expertise aids in establishing probable cause in conjunction with other indications of drug trafficking by a defendant.  See, e.g., Goward, 188 F. App'x at 358–59.  However, this statement cannot be afforded too much weight, as it comes perilously close

to sanctioning searches of the homes of suspected drug dealers based on their "status as a drug dealer, standing alone." Frazier, 423 F.3d at 533.

Defendant has shown that there was insufficient probable cause to support this warrant.

B. *Good-Faith Exception*

Defendant also objects to the Magistrate Judge's determination that the good-faith exception to the exclusionary rule applies in this case. (ECF No. 36 at PageID 78.) He argues that the search warrant affidavit lacks even a "minimally sufficient nexus" between his alleged drug trafficking activities and his residence. (Id. at PageID 80.)

Under the good-faith exception, evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective" will not be suppressed. United States v. Leon, 468 U.S. 897, 905 (1984). The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n. 23. "Some modicum of evidence, however slight" will support the good-faith belief of an officer. McCoy, 905 F.3d at 416 (quoting United States v. White, 874 F.3d 490, 496 (6th Cir. 2017)). It is only when a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" that it falls outside of the good-faith exception and suppression is warranted. Leon, 468 U.S. at 923.

"[A] minimally sufficient nexus between the illegal activity and the place to be searched" is enough to support an officer's good-faith belief in a warrant's validity. United States v. Carpenter, 360 F.3d 591, 596 (6th Cir. 2004). The affidavit in this case indicates that a reliable informant identified Neal as a seller of large amounts of marijuana, and he provided marijuana to that informant in a controlled purchase. (ECF No. 32 at PageID 49.) The officers

10

therefore reasonably understood Defendant to have been a drug dealer, he had engaged in a recent drug sale, and they established Defendant lived at that particular residence, factors that go "a long way toward showing that Leon's good-faith exception applies." Reed, 993 F.3d at 451.

This information, and the executing officer's understanding that when a "drug dealer is engaging in continual and ongoing operations, drug contraband is likely to be found in the drug dealer's home," form a minimal nexus between Defendant's alleged drug dealing and his home such that the officer's belief that it amounted to probable cause was not unreasonable. McCoy, 905 F.3d at 418. "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." Davis v. United States, 564 U.S. 229, 236 (2011). (quoting Herring v. United States, 555 U.S. 135, 141 (2009)). "But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, . . . the 'deterrence rationale loses much of its force.'" Id. (quoting Leon, 468 U.S. at 919).

The standard for the good-faith exception is therefore met in the instant case.

## IV.   CONCLUSION

Upon de novo review, the Court **ADOPTS IN PART** the Report and Recommendation of the Magistrate Judge. Accordingly, Defendant's Motion to Suppress is **DENIED**.

**SO ORDERED**, this 12th day of December, 2022.

> /s/ Jon P. McCalla
> JON P. McCALLA
> UNITED STATES DISTRICT JUDGE

11